## ORA IVES v. ALFRED F. PILLSBURY.[1]

December 16, 1938.

No. 31,812.

*Hilda Blair Ray,* for appellant.
*Koon, Whelan, Hempstead & Davis,* for respondent.

J ULIUS J. OLSON, J USTICE.

Plaintiff appeals from an order denying her blended motion for amended findings or new trial.

Her suit was brought under our declaratory judgments act, L. 1933, c. 286 (3 Mason Minn. St. 1938 Supp. § 9455-1, *et seq.*), "primarily to procure a declaration of the status, rights, and legal

[1]Reported in 283 N. W. 140.

relations of the parties arising out of" a letter written by one Watson to defendant on November 7, 1932. While additional relief was sought, we shall limit our consideration to the mentioned primary objective.

On August 26, 1921, Henry P. Watson (the writer of above mentioned letter) executed his last will under the terms of which he gave to his wife, Bessie Watson, all of his property, real, personal, and mixed, "to hold and possess the same, during the term of her natural life, for her own exclusive use and benefit, with power to sell, dispose of and use such part of the corpus of said property as may be necessary for her comfortable maintenance and support, in accordance with her station in life and the support, maintenance and education of her children, or other persons who may be dependent upon her. * * * After the death of my said wife, any and all of the property and estate mentioned above, or so much thereof as shall then be left, I give, devise and bequeath unto my friend, Alfred F. Pillsbury, * * * to have and to hold the same unto himself, his heirs and assigns forever." The wife and defendant were named, respectively, executrix and executor thereof. Mrs. Watson executed her consent thereto in writing. Testator died March 7, 1934. Upon due proceedings had his will was admitted to probate in and by the probate court of Hennepin county, and in that court these proceedings "are still pending and said estate has not yet been closed." The persons named to be representatives duly qualified and are still acting as such.

On March 5, 1935, ancillary proceedings in probate were had in and by the county court of Chippewa county, Wisconsin, there being certain real estate in that jurisdiction belonging to decedent. On March 10, 1936, a final decree was issued by that court, and decedent's title and interest in and to the property there situated was vested in the widow and defendant in strict conformity with the terms of the will.

The letter to which plaintiff refers as the basis for her suit, and mention of which has heretofore been made, was written by testator and personally delivered to defendant on or about its date, Novem-

ber 7, 1932. It reads (omitting its date and the name and address of defendant) as follows:

"As you are administrator of my estate in case of my death, I want you to see that Miss Ora Ives, now residing in Chicago, Illinois, and if she changes her address you can find out from her sister, Mrs. R. P. Woodruff, where she is; she is to receive one hundred and fifty dollars ($150.00) per month as long as she lives out of my estate.

"You will treat this as confidential as you possibly can under the circumstances.

> "Yours very truly,
> "[Signed] H. P. Watson
> "Witness John Lilleskov."

A copy of that letter was forwarded to plaintiff with instructions to keep safely. Shortly after Mr. Watson's death she presented herself to defendant and requested payment of the $150 per month mentioned in the letter. Defendant refused to comply. He did, however, pay her $50 out of his own personal funds as a matter of charity, as she claimed to be in dire need of money. Thereafter the widow paid plaintiff $75 per month, later reduced to $50, but she later discontinued making any payments.

Defendant testified in respect to what Mr. Watson said when the letter was delivered, as follows:

" 'Well,' I said, 'Hal, what does this mean?' 'Well,' he says, 'You see what it means.' 'Well,' I said, 'Apparently you have been keeping this woman for some time,' and he said, 'Yes'; and I said, 'Well, I can't make these payments you say. I am an administrator of your estate, but I can't make these payments legally. You must know that you can't affect a document like a will with an extraneous paper like this; you can't affect a will by an extraneous paper like this. It won't be legal. I personally won't have anything— any responsibility in carrying out this paper—what you tell me to do in this paper, but if there is any way in which it can be legally done I will do the best I can,' * * *

Q. "What you told him was that you would not pay it out of your own pocket?

A. "That I would assume no responsibility. I knew not whether his estate would be solvent. As executor I couldn't do anything about it.

Q. "The property coming to you as a legatee and devisee under the will—did you at any time tell Mr. Watson that if you received money from his estate that you would still not pay Miss Ives $150 a month?

A. "I certainly told him I would not, * * *. No, I never told Mr. Watson that.

Q. "You never refused to pay her the money if the money was available?

A. "The question never arose. * * *

Q. "Then you mean to say you never told him?

A. "We never discussed the question * * *.

Q. "Did you have any conversations with Mr. Watson after this particular day, with reference to the letter, plaintiff's exhibit A?

A. "Not that I could recollect. It never was mentioned afterward."

The court was of opinion that plaintiff had failed to establish any cause of action against defendant and accordingly directed that plaintiff should take nothing by her suit and that defendant should have judgment for his costs and disbursements.

■ Plaintiff has not sought to impose liability against decedent's estate in the probate court, and she disclaims any such purpose here. Rather and only her claim is that the letter of November 7, together with defendant's promise made to testator at the time of its delivery, and adding thereto defendant's refusal to make the $150 monthly payments or to recognize any obligation on his part so to do, has resulted in a situation requiring the court to impose upon defendant's interest in whatever property he may receive under Mr. Watson's will a constructive trust for plaintiff's benefit. In support of such claim she cites and relies upon the well established rule that: "Where a person, knowing that a testator, in

146

giving him a devise or bequest, intends it to be applied for the benefit of another, either expressly promises, or by his action at the time implies, that he will carry the testator's intention into effect, and the property is left to him in the faith on the part of the testator that such promise will be kept, the promisor will be held as a trustee *ex maleficio.*" 66 A. L. R. 157; also citing 3 Bogert, Trusts and Trustees, p. 1617, § 499; Restatement, Restitution, pp. 757, 758, § 186; Restatement, Trusts, § 55, and many other authorities. She insists that testator, "in reliance on" defendant's "promise to carry out the directions set forth and contained in said written instrument * * * caused the provisions of his .said will in favor of said * * * Pillsbury to remain unchanged." So it is plain that the liability sought to be imposed is founded upon defendant's oral promise or representation to testator, and is necessarily limited to whatever property he is to receive under the will. While the direction or request set forth in the letter is unquestionably testamentary in character and purpose, it is clearly ineffective to cause a change in the terms of the will. That was the reason assigned by defendant for refusing to make any promise or assume any responsibility in respect of it. Plaintiff places entirely too much reliance upon defendant's statement, "but if there is any way in which it can legally be done I will do the best I can." That statement was but a part of what defendant said. From what we have quoted it is apparent that defendant deemed it impossible for Watson to make the request contained in the letter effective in the manner suggested. "You must know that you can't affect a document like a will with an extraneous paper like this. It won't be legal."

In this connection it is well to bear in mind that the letter was addressed to defendant in his representative capacity, and in that capacity he was to make the monthly payments "out of my estate," and this was to continue "as long as she [plaintiff] lives." Nowhere is there the slightest suggestion that defendant, either out of his own funds or out of property that might come to him under the will, promised any such performance. Whether defendant was right or wrong about the legal limitations urged by him as reasons for his refusal to agree to the proposed change is not the question

for solution here. The fact that he refused to agree to testator's requests or instructions is what determines the result, for upon what then took place between them hinges the determinative issue. The reason why testator made no change in the will is readily to be seen. His wife had assented to the will as originally drawn. Would she be likely to consent to the change sought by testator so as to allow these monthly payments to go to a woman unknown to her, thus "keeping this woman" in affluence "as long as she lives"? That is the compelling reason, not any promise made by defendant. How could any fair-minded person, upon this record and acting judicially, find that defendant expressly promised, or by his action at the time led Watson to believe, he would carry testator's intention into effect? Nor does plaintiff bring herself within the rule laid down in Barrett v. Thielen, 140 Minn. 266, 270, 167 N. W. 1030, 1032, 168 N. W. 126, that "where a decedent in his lifetime makes known to his heir a desire that his property shall be disposed of in a particular manner, and by the acts and conduct of the heir decedent was prevented from making a will or other instrument giving effect to his intentions, or was persuaded not to do so by the promise of the heir to distribute the property at the death of decedent in harmony with his directions, in reliance upon which promise no will was made, on the refusal of the heir to make such disposition at the proper time equity will convert the title acquired by him as heir into one for the use and benefit of those to whom decedent intended the property should go, with the legal title in the heir as trustee only. [Citing cases.] The refusal of the heir to comply with the promise is treated as fraudulent, and actual fraud in inducing the decedent to refrain from making a will need not be shown, and the statute of frauds has no application." In that case, "the property in question was purchased by plaintiff with funds of the estate, for the use and benefit of defendant, and constituted a part performance of her promise to divide the property with defendant and a gift or transfer of the same to her. It was accepted by defendant. Plaintiff is not therefore the owner of the property, except as she holds the record title. Defendant is the beneficial owner, and the legal title is so held by plaintiff as trustee." (140

Minn. 270.)    See also 6 Dunnell, Minn. Dig. (2 ed. & Supps.) § 9919, and cases cited under notes.

Where, as here, the case hinges upon oral evidence to establish that which the statute of frauds, 2 Mason Minn. St. 1927, § 8456, and the statute of wills, *Id.* § 8735, require to be in writing, the oral evidence to establish the facts claimed must be clear, unequivocal, and convincing.   Randall v. Constans, 33 Minn. 329, 338, 23 N. W. 530; Laird v. Vila, 93 Minn. 45, 51, 100 N. W. 656, 106 A. S. R. 420; Barrett v. Thielen, 140 Minn. 266, 271, 167 N. W. 1030, 168 N. W. 126.   Tested by that rule, what have we upon which, as a matter of law, to found a result opposed to that reached by the trial court?

We think the trier of fact reached a correct solution of the problem presented, and the order here for review is affirmed.