# LAND O' LAKES DAIRY COMPANY v. VILLAGE OF SEBEKA AND OTHERS.[1,2]

March 12, 1948.

No. 34,519.

[1]Reported in 31 N. W. (2d) 660.

[2]Certiorari denied by U. S. Supreme Court June 14, 1948.

*Doherty, Rumble, Butler & Mitchell* and *Harold Jordan,* for appellant.

*Charles W. Kennedy,* County Attorney, *Hugh G. Parker,* and *R. S. Bradford,* for respondents.

FRANK T. GALLAGHER, JUSTICE.

Appeal from an order sustaining the demurrers of defendants to the amended complaint.

This is an action by Land O' Lakes Dairy Company, a corporation, hereinafter called the dairy company, against the village of Sebeka and others, under the declaratory judgments act, praying that certain property, consisting of a milk dehydration plant in the village of Sebeka and personal property connected therewith, be adjudged exempt from taxation as belonging to the United States.

The facts stated in the complaint are substantially the same as those in Land O' Lakes Dairy Co. v. County of Douglas, 225 Minn. 535, 31 N. W. (2d) 474, filed herewith. Since the appeals are contemporaneous, they are treated as companion cases.

The dairy company assigns as error that the court erred in sustaining the demurrers to its amended complaint.

On May 1, 1945, and again on May 1, 1946, the real and personal property of which the plant consisted was listed and assessed for tax purposes. Pursuant to the provisions of M. S. A. c. 278, the dairy company, on or before May 31, 1946, paid one-half the real estate tax and simultaneously served and filed its petition, as required by c. 278, claiming said real estate to be exempt from taxation. No hearing was held on the petition prior to November 1, 1946. The company did not pay any part of the unpaid balance of the real estate tax before November 1, 1946, nor was such payment waived by court order. All proceedings in regard to the petition were dismissed by mandate of M. S. A. 278.03, which provides in part that if the proceedings instituted by the filing of the petition have not been completed before November 1 next following the

filing of the petition the petitioner shall pay 50 percent of the remaining unpaid taxes for the current year or 50 percent of the remaining unpaid tax based upon the probable value of the property, if the value has been found by the court upon application. This section of the statute also provides:

"* * * Failure to make payment of such additional amount shall operate automatically to dismiss the petition and all proceedings thereunder unless such payment is waived by an order of the court * * *."

The 1945 personal property taxes were paid in full, but none of the real estate or personal property taxes assessed for the year 1946 have been paid.

After dismissal of the proceedings brought under the provisions of c. 278, the dairy company brought this action pursuant to M. S. A. c. 555, praying for a judgment declaring and adjudging the land, plant, machinery, and equipment described in the warranty deed and bill of sale referred to in the amended complaint to be exempt from taxation as of May 1, 1945; that all assessments, levies, and taxes described in the complaint be declared wholly null and void and of no legal effect; that the property retain its status of exemption from taxation until such time as the United States should be divested of its interest in the property; and, by way of supplemental relief, for an order decreeing the refund to the company of the first half of the 1945 taxes paid by it as above referred to.

Two issues are raised by the appeal: (1) Is the dairy company entitled to proceed under the declaratory judgments act? (2) Does the complaint set out facts entitling the company to relief under this act?

◼ We must first consider whether the declaratory judgments act is available for the purpose of determining whether the property under consideration is exempt from taxation. Defendants contend that the declaratory judgments act is not applicable here because the legislature provided an adequate and exclusive remedy by enacting the laws now appearing as M. S. A. 277.02 and 278.01. Section

277.02 contains provisions for relief from assessments for personal property taxes and reads in part as follows:

"On the fifth secular day of April, of each year, the county treasurer shall make a list of all personal property taxes remaining delinquent April first, and shall immediately certify to and file the same with the clerk of the district court of his county, and upon such filing the list shall be prima facie evidence that all of the provisions of law in relation to the assessment and levy of such taxes have been complied with. On or before the tenth secular day thereafter, any person whose name is embraced in such list may file with the clerk an answer, verified as pleadings in civil actions, setting forth his defense or objection to the tax or penalty against him. The answer need not be in any particular form, but shall clearly refer to the tax or penalty intended, and set forth in concise language the facts constituting his defense or objection to such tax or penalty. The issues raised by such answer shall stand for trial at any term of court in such county in session when the time to file answers shall expire, or at the next general or special term appointed to be held in such county; and, if no such term be appointed to be held within 30 days thereafter, then the same shall be brought to trial at any general term appointed to be held within the judicial district, upon ten days' notice. The county attorney of the county within which such taxes are levied, or, if there be none, of the county within which such proceedings are instituted, shall prosecute the same. At the term at which such proceedings come on for trial, they shall take precedence of all other business before the court. The court shall, without delay and summarily, hear and determine the objections or defenses made by the answers, and at the same term direct judgment accordingly, and in the trial shall disregard all technicalities and matters of form not affecting the substantial merits. If the taxes and penalties shall be sustained, the judgment shall include costs."

Section 278.01 provides for a defense or objection to taxes on real estate as follows:

"Any person having any estate, right, title, or interest in or lien upon any parcel of land, who claims that such property has been partially, unfairly, or unequally assessed, or that such parcel has been assessed at a valuation greater than its real or actual value, or that the tax levied against the same is illegal, in whole or in part, or has been paid, or that the property is exempt from the tax so levied, may have the validity of his claim, defense, or objection determined by the district court of the county in which the tax is levied by serving copies of a petition for such determination upon the county auditor, county treasurer, and the county attorney and filing the same, with proof of such service, in the office of the clerk of the district court on or before the first day of June of the year in which such tax becomes payable."

As to the real estate taxes, defendants claim that there is no need for proceedings for a declaratory judgment, because, they argue, M. S. A. c. 278 is adequate, speedy, and complete, and that if a taxpayer fails or refuses to comply with the requirements of that statute the declaratory judgments act was not meant as another remedy. They cite Farmers & Merchants Bank v. Billstein, 204 Minn. 224, 283 N. W. 138. That action was in mandamus to compel a county auditor in this state to issue certificates stating the amount required to redeem certain lands of plaintiff from tax sales and commanding the county treasurer to receive such money and issue the proper certificate of redemption. Plaintiff appealed from the judgment quashing the writ of mandamus issued and duly served on the ground that mandamus was not the proper remedy. It was held that mandamus was the proper remedy. In reversing the trial court, this court said (204 Minn. 227, 283 N. W. 140):

"The declaratory judgments law was not designed to supplant other remedies well established and working satisfactorily. Miller v. Siden, 259 Mich. 19, 242 N. W. 823."

In Bell Tel. Co. v. Lewis, 313 Pa. 374, 376, 169 A. 571, where it was held that an action for a declaratory judgment against the

governor to test the constitutionality of certain statutes could not be maintained, the court said:

"* * * Such a proceeding will not be entertained where another statutory remedy has been provided in cases of similar import: Ibid., 471 [284 Pa. 455, 131 A. 265]; Leafgreen v. La Bar, 293 Pa. 263 [142 A. 224]; Nesbitt v. Manufacturers' Casualty Ins. Co., 310 Pa. 374 [165 A. 403]. Here the plaintiff has a fully adequate remedy in which to test the question which it raises, the constitutionality of the statutes, by mandamus proceedings against the secretary of highways: * * *."

Defendants also cite cases from other jurisdictions in support of the theory that proceedings for declaratory judgments are not authorized where another statutory remedy has been provided for the character of the case presented. See, Williams v. Tawes, 179 Md. 224, 17 A. (2d) 137, 132 A. L. R. 1105; Lisbon Village Dist. v. Lisbon, 85 N. H. 173, 155 A. 252; Manufacturers Nat. Bank v. City of Detroit, 285 Mich. 273, 280 N. W. 760; Annotations, 132 A. L. R. 1120, 12 A. L. R. 76, 50 A. L. R. 48; 16 Am. Jur., Declaratory Judgments, § 21. Defendants claim that this court has not intimated in any cases which have been before it involving c. 278 that the issues which it authorizes may be presented in the alternative upon application for a declaratory judgment. Cited is Saxhaug v. County of Jackson, 215 Minn. 490, 497, 10 N. W. (2d) 722, 726, wherein defendants in this case contend that this court indicated the exclusiveness of the procedure allowed by c. 278 by stating that "the statute [M. S. A. c. 278] permitting him [landowner] to contest the validity of taxes by petition should be liberally construed to afford him relief not otherwise open to him." In Rosso v. Village of Brooklyn Center, 214 Minn. 364, 8 N. W. (2d) 219, it was held that because c. 278 affords a taxpayer an adequate remedy to contest assessment proceedings or the collection of the assessment the taxpayer is not entitled to maintain a suit in equity for an injunction.

The dairy company argues that this court has on several occasions held that the declaratory judgments act affords an alternative remedy, the application of which is to be liberally construed whenever there exists a justiciable issue the decision of which will terminate a controversy, citing Montgomery v. Minneapolis Fire Dept. Relief Assn. 218 Minn. 27, 15 N. W. (2d) 122; Barron v. City of Minneapolis, 212 Minn. 566, 4 N. W. (2d) 622; State Farm Mut. Auto Ins. Co. v. Skluzacek, 208 Minn. 443, 294 N. W. 413; Leighton v. City of Minneapolis, 222 Minn. 516, 25 N. W. (2d) 263. Only one of these cases—the Leighton case—hereinafter considered, involved a tax matter.

The uniform declaratory judgments act was adopted in this state by L. 1933, c. 286. Prior to that time, the method of judicially testing the validity of personal property taxes (M. S. A. 277.02) was not available until after the tax became delinquent. A taxpayer who paid the tax in order to avoid penalties before delinquency and who sued for refundment could be defeated by the claim that payment was voluntary. 6 Dunnell, Dig. & Supp. §§ 9516-9520. Equitable relief was denied in the ordinary case on the theory that the remedy at law was adequate. Wall v. Borgen, 152 Minn. 106, 188 N. W. 159. See, also, 6 Dunnell, Dig. § 9536, and Id. Dig. & Supp. § 9537. It is true that M. S. A. c. 274 provides administrative methods for the review, correction, and equalization of assessments. See, also, 15 Minn. L. Rev. 692. Although of some advantage, the opportunity given the taxpayer by this chapter to seek relief through administrative channels does not appear to be so complete as to satisfy the need for a prompt judicial determination of his rights. There has been no change in the statutory remedy relating specifically to personal property taxes, and, apart from the declaratory judgments act, it appears to us that no prompt judicial relief is available, except under special circumstances, until after the personal property tax has become delinquent. We believe that the declaratory judgments act was intended to provide relief in such situations, and if the law were the same now as it was then we would conclude that the declaratory judgments act was avail-

able to test the validity of either real or personal property taxes. However, the legislature has since provided a specific method by which real estate taxes can be questioned. L. 1935, c. 300, § 1 (M. S. A. 278.01). Under this law, taxpayers can have their rights determined with reference to real estate taxes without incurring a penalty and without running the risk of having the payment considered voluntary. Having afforded this specific statutory remedy, we feel that the legislature intended to remove proceedings to question the validity of real estate taxes from the scope of the declaratory judgments act, at least where the taxes have been assessed and § 278.01 can be used.

In the case of Leighton v. City of Minneapolis, 222 Minn. 516, 25 N. W. (2d) 263, *supra,* the plaintiff sought to establish that L. 1945, c. 351, providing for a certain tax levy, was unconstitutional. The court, in holding that the plaintiff was entitled to relief under the declaratory judgments act, said (222 Minn. 518, 25 N. W. [2d] 264):

"* * * The act is not an extraordinary remedy, but an alternative remedy where there is a justiciable issue, the decision upon which will terminate a controversy. There is such a controversy here, and the act applies."

The Leighton case must be distinguished from the case at bar with reference to the real estate tax, because in that case the opinion does not indicate that the tax had been assessed so as to give the plaintiff an opportunity to file a petition under M. S. A. 278.01. Here, the real estate taxes were assessed for both the years 1945 and 1946, and the dairy company availed itself of the provisions of § 278.01 by paying one-half the 1945 real estate tax prior to May 31, 1946, and filing its petition in the manner provided for in that section. In that petition it claimed that the 1945 tax was invalid and that the property described in the petition was exempt from taxation. The question as to the validity of the 1945 real estate tax could have been determined under that petition, as provided for in the statute, if the proceedings instituted by the filing of the peti-

tion had been completed before November 1 next following the filing of the petition. This was not done, but prior to November 1 the dairy company still had a remedy under c. 278 by either paying 50 percent of the remaining unpaid taxes for the current year before November 1 or by applying to the court before that time for the waiver of this payment, as provided for in the statute. Inasmuch as none of these statutory requirements were completed before November 1 next following the filing of the petition, the statute made it mandatory to dismiss the petition, which was done.

The same statute was available to the dairy company with reference to the 1946 real estate tax. No petition was filed under § 278.01 for a determination of the 1946 real estate tax, nor was any of the tax paid. Instead of availing itself of the provisions of c. 278 to determine the validity of the 1946 real estate tax, the company apparently concluded that inasmuch as the petition relative to the 1945 real estate tax had been automatically dismissed the entire question of exemption could be raised by proceedings under the declaratory judgments act as an alternative remedy. The company cannot be criticized for this procedure in view of the fact that we can find no prior determination by this court on the particular question before us as to whether the declaratory judgments act is available as an alternative remedy when c. 278 provides a specific remedy to determine the validity of real estate taxes in this state.

In order that there shall be no future confusion on this particular point of the law, we hold that in enacting M. S. A. c. 278 it was the intention of the legislature to provide an adequate, speedy, and simple remedy for any taxpayer to have the validity of his claim, defense, or objections determined by the district court in matters where the taxpayer claims that his real estate has been partially, unfairly, or unequally assessed, or that it has been assessed at a value greater than its real or actual value, or that the tax levied against the property is illegal in whole or in part, or has been paid, or that the property is exempt from the tax so levied. We believe that when the legislature enacted L. 1935, c. 300 (M. S. A.

c. 278) it did so for the purpose of providing a rather simple remedy for the taxpayer to have his real estate tax grievances determined, and that it was never the intention that the aggrieved taxpayer could first proceed under this statute and, if his proceeding was dismissed for noncompliance, then come under the declaratory judgments act to have the same issue decided in another manner. If under the circumstances of this case with reference to the real estate taxes the declaratory judgments act is made available as an alternative remedy when c. 278 provides such a special remedy for the determination of questioned real estate tax matters, it will lead to a multiplicity of suits, which seems uncalled for under the circumstances. We hold that, so far as the determination of tax matters referred to in § 278.01 on real estate is concerned, c. 278 provides the necessary requisites and that L. 1933, c. 286 (M. S. A. c. 555), known as the uniform declaratory judgments act, is not available to the dairy company as an alternative remedy.

The legislature has not remedied the defects of the old method of testing personal property taxes under M. S. A. 277.02. The taxpayer must wait to file his defense or objections to the personal property tax or penalty until the tax has become delinquent, and if the taxes and penalties are sustained by the court he then must pay, in addition to the tax, the amount of the penalty. Because of these defects in procedure, we believe that with respect to personal property taxes relief under the declaratory judgments act is available. The taxpayer may commence his action under the declaratory judgments act before the taxes become delinquent and before any penalty attaches. We therefore hold that the declaratory judgments act was available to plaintiff for the purpose of determining its objections or defenses to the assessment of the personal property taxes under consideration.

■ We now ask whether the dairy company is entitled to the relief which it seeks. In passing on this, we are considering only the matter of personal property taxes involved in the pleadings, as we have already held herein that the declaratory judgments act is not available as to the real estate taxes.

The allegations of the complaint show that the dairy company entered into an agreement with the United States, hereinafter called the government, on June 9, 1944, whereby (a) the dairy company agreed to acquire the necessary real estate and develop a plant for the manufacture of dried milk products; (b) the government agreed to buy the plant or facility from the dairy company upon completion and then lease it back for a period of time to the dairy company; (c) a formula was established for fixing the consideration to be paid by the government and the rent to be paid by the dairy company; and (d) provision was made for repurchase of the facility by the dairy company upon termination of the emergency which made its establishment by the government necessary.

Five exhibits are attached to and made a part of plaintiff's complaint. They are:

(a)  The contract of June 9, 1944, which sets out the basic understanding between the parties as outlined above.

(b)  The amendment of November 6, 1945, to the contract of June 9, 1944, which extended the time for the completion of the facility by the dairy company to December 31, 1945. It recited, however, that "said facility was placed in production on or about the first day of April, 1945," and provided "That the title to the facility shall be considered as vesting in the Government as of the first day of April, 1945."

(c)  The warranty deed and bill of sale dated November 24, 1945, by virtue of which the dairy company transferred to the government the facility here involved for $415,285.51 upon the condition that "if, after the date of a declaration by the President of the United States of America that the above described premises and said machinery, equipment and personal property are no longer needed by the party of the second part [the government] for the purposes of 'An Act to Promote the Defense of the United States', * * * and at any time during the life of a lease between the parties hereto, dated June 9, 1944, which became effective April 1, 1945, or during the life of any extension or renewal of said lease, said party of the

first part [the dairy company] pays to the said party of the second part [the government] a sum of money to be determined as hereafter provided, the title to the parcel of land hereinbefore described and the buildings and improvements situate thereon, the license agreement and the rights thereunder, and the title to the machinery, equipment and personal property shall revert to the said party of the first part." The repurchase price was to be ascertained by reducing the sum paid to the dairy company by a fixed percentage annually during the term of the lease.

(d) The lease of June 9, 1944, whereby the government leased the facility which it proposed to acquire from the dairy company to it "To Have And To Hold the same for a period of five (5) years beginning on the date when clear title to the facility is acquired by Lessor." The lease contains provisions governing public liability insurance, inspection of premises, subletting, operation of the facility as a milk-drying plant, termination, and renewal by the parties. From these provisions, it is clear that the principal interest of the government was to establish a plant which would produce the milk products then needed as a part of the national defense program. From its inception, the facility was in the possession and under the control of the dairy company, subject to the supervision of the government. Paragraph 12 of this lease provides:

*"During the term of this lease, Lessee shall pay promptly, and at least ten days prior to delinquency, all taxes assessed or other governmental charges that may be legally imposed upon or constitute a lien against the facility or any part thereof."* (Italics supplied.)

(e) A lease amendment, dated November 6, 1945, fixing the term of the lease as five years from April 1, 1945.

The complaint alleges that from April 1, 1945, to the "present date" the dairy company was in possession of the facility "as lessee of the United States." Paragraph X of the complaint reads:

"That the President of the United States has made a declaration, effective July 31, 1946, that said plant and equipment is no longer

needed by the United States for the purposes expressed in said contract, lease and deed of conveyance. That plaintiff has not to this date made any payment to the United States nor done anything whatsoever to work a reversion of the title to said property as provided in said Warranty Deed and Bill of Sale; nor has plaintiff signified to the United States in any manner an intention on its part of doing so at any time in the future."

On the basis of these facts, the dairy company seeks to be relieved from any possible tax burden, not because of any immunity to which it is itself entitled, but because of the conceded immunity of its "lessor."

It has long been established that the properties, functions, and instrumentalities of the federal government are immune from state taxation. M'Culloch v. Maryland, 17 U. S. (Wheat.) 316, 4 L. ed. 579. The extent to which persons who deal with the federal government should be permitted to benefit by this immunity has proved a difficult question. The authorities have been reviewed by this court in In re Petition of S. R. A. Inc. 219 Minn. 493, 18 N. W. (2d) 442. That case involved the owner of the equitable title to real estate. The interest of such an owner is in some respects similar to and in others distinct from that of the dairy company under the instruments above reviewed. Apparently, the parties felt when they inserted paragraph 12 in the lease that the property would be subject to taxation. We do not decide that such a provision would deprive the federal government of the immunity which it would otherwise have. We do feel, however, that a private corporation, having bargained to pay the taxes assessed during the term of the lease, should not be permitted to avoid an obligation which it voluntarily assumed by asserting rights reserved to the federal government, which is not a party to this proceeding. The dairy company's claim that paragraph 12 of the lease refers only to taxes legally assessed does not persuade us. If it was contemplated that the interest of the government in the facility was to exempt the

dairy company from all taxes, both real and personal, paragraph 12 would be meaningless.

It is our judgment, therefore, that while the declaratory judgments act is available for the purpose of testing the validity of a questioned tax levy and assessment as to the personal property, the dairy company in this action is not entitled to relief under its terms. Having voluntarily assumed to pay the tax, it is faced with this dilemma: (a) If it is not obligated to pay the tax, it has no such interest in the question as will entitle it to a declaratory judgment in its favor; (b) if it is obligated to pay the tax, it is so because of a duty voluntarily assumed, and it is not entitled to a judgment declaring its own promise to pay the taxes to have been a meaningless thing. For these reasons, the order of the trial court sustaining the demurrers to the complaint is affirmed.[2]

Affirmed.

JULIUS J. OLSON, JUSTICE (concurring).

I concur in the result.

PETERSON, JUSTICE (dissenting).

I dissent from so much of the decision as holds that a taxpayer may have his personal property tax liability determined under the declaratory judgments act. Regardless of what we may have said in the Leighton and similar cases, I think that it was the legislative

[2]On April 14, 1948, the following order was entered:

Upon the petition of the appellants in the above entitled action for a rehearing for the purpose of clarification of the last paragraph of the opinion filed March 12, 1948, and upon due consideration of said petition by the court, it is hereby ordered that the last paragraph of the opinion filed in said action on the 12th day of March 1948 be and is hereby changed to read as follows:

"It is our judgment, therefore, that, while the declaratory judgments act is available for the purpose of testing the validity of a questioned tax levy and assessment as to the personal property, the dairy company in this action is not entitled to relief under its terms. Since the dairy company has voluntarily assumed to pay the tax, it is not entitled to a judgment declaring its own promise to pay the taxes to have been a meaningless thing. For these reasons, the order of the trial court sustaining the demurrers to the complaint is affirmed."

intent that the liability of a particular taxpayer for a particular personal property tax should be determined exclusively in the proceedings under the statute for the enforcement of personal property taxes.

MAGNEY, JUSTICE (dissenting).

I concur in the dissent in part of Mr. Justice Peterson.

MATSON, JUSTICE (dissenting).

I concur in the dissent in part of Mr. Justice Peterson.

