**UNITED STATES v. STATE OF MINNE-SOTA et al. (two cases).**

Nos. 905, 906.

United States District Court
D. Minnesota, Sixth Division.

July 20, 1953.

George E. MacKinnon, U. S. Atty., Minneapolis, Minn., Thomas L. McKevitt, Atty., Department of Justice, Washington, D. C., for the United States.

J. A. A. Burnquist, Atty. Gen., George B. Sjoselius, Deputy Atty. Gen., Joseph S. Abdnor, Asst. Atty. Gen. of Minn., for the State of Minnesota.

Charles W. Kennedy, County Atty., Wadena, Minn., for Wadena County and said County officers.

F. H. Stadsvold, County Atty., Crookston, Minn., for Polk County and said County officers.

Doherty, Rumble, Butler & Mitchell, St. Paul, Minn., M. J. Doherty and Harold Jordan, St. Paul, Minn., for Land O'Lakes Dairy Co.

490

JOYCE, District Judge.

The two actions here consolidated for trial were commenced by the United States as plaintiff, the jurisdiction of this court being found in 28 U.S.C.A. § 1345.

Subsequent to the commencement of the actions the defendant Land O'Lakes Dairy Company was impleaded under Rule 19(b), Federal Rules of Civil Procedure, 28 U.S.C.A. On the basis of the pleadings in their final form the United States seeks in each action (1) a declaratory judgment against the State of Minnesota, the county of situs, and the appropriate state and county tax officers, that certain real property tax assessments appearing of record for the years 1946 through 1952 inclusive do not constitute liens or charges enforceable against certain described property while the same is owned by the United States or in the hands of any purchaser therefrom; (2) a decree quieting the title to the property as against any claims by those defendants for such taxes; and (3) certain incidental relief the nature of which will later be made apparent. The above defendants being in the same interest will be hereinafter collectively referred to as the "State".

As an alternative to the above claim if not entitled to the above relief, the Government seeks an order compelling Land O'Lakes to pay such tax claims under a certain contractual agreement.

Land O'Lakes by its answer denies any contractual liability but joins the Government in its claim against the State. The State asserts the validity of the tax claims and joins the Government in seeking the alternative relief prayed against Land O'Lakes. The theories upon which the defendants claim standing to join in one or the other of the claims of the Government will be discussed hereafter.

The interest of the United States in the two tracts of land here involved stems out of its efforts to meet its obligations under the Lend-Lease program initiated in connection with World War II. In aid of such program the Government found it necessary to increase the production of dried milk and under authority conferred by 22 U.S.C.A. §§ 411–419, Lend-Lease Act, and 55 U.S. Stat. 53–55, Defense Aid Supp. Appropriation Act, 1941, it entered into certain transactions with companies experienced in the production of related products.

With reference to the tract involved in Civil case No. 906 and located in Wadena County, the Government acting through the Secretary of Agriculture, on June 9, 1944 entered into a contract with the defendant Land O'Lakes which provided so far as material here that Land O'Lakes would acquire a described tract of land and construct thereon at its own cost and according to prescribed specifications a complete plant for the production of dried milk and upon completion would convey the same to the Government for a consideration equal to the value of the entire property to be determined as there prescribed. The contract also provided that title to the property, there referred to as the "facility", should be subject to a condition to be inserted in each instrument of title or conveyance in part in the following language:

"Provided, however, that if after the date of declaration by the President that said land and buildings and said machinery, equipment and fixtures are no longer needed by the United States of America for the purposes of 'An Act to Promote the Defense of the United States', approved March 11, 1941, and of any acts of Congress amending or supplementing the aforesaid act, and at any time during the life of the lease dated June 9th, 1944, between the parties hereto, which is to become effective upon the date of this deed, or during the life of any extension or renewals thereof, Land O'Lakes Dairy Company pays to the said United States a sum of money to be determined as hereinafter provided, the title to said land and building and said machinery equipment and fixtures shall revert to Land O'Lakes Dairy Company. * * *"

The balance of the provision to be inserted in the conveyance prescribed the amount required to be paid to effect such reversion; the consideration paid by the Government less an allowance for depreciation of 10% per annum upon the basis of the amount of such consideration paid less the value of the land.

The contract also provided that upon the reverting of the title the Government would execute and deliver to Land O'Lakes such written instruments as would be necessary to evidence the event and should Land O'Lakes fail to make such payment: " * * said condition subsequent shall be null and void and of no effect and title to the facility then vested shall be indefeasible. The Cooperative shall execute and deliver to the Government such written instrument or instruments as may be required by the Government to show its title to the facility."

On the same day, June 9, 1944, the Government executed a lease of the property to Land O'Lakes for a term of 5 years on an annual rental equivalent to 11% of the consideration paid for the facility. This lease contained provisions against assignment or subletting, an agreement on the part of Land O'Lakes that the facility should be used only for the purposes of manufacture of dried milk or such other milk products as might be specified by the Government, and that all such products should be first offered for sale to the Government at reasonable market prices. As to taxes the lease provided:

"12. During the term of this lease, Lessee shall pay promptly, and at least ten days prior to delinquency, all taxes assessed or other governmental charges that may be legally imposed upon or constitute a lien against the facility or any part thereof."

Land O'Lakes had a right to renew the lease under certain conditions and a right to terminate on 10 days notice at any time after a declaration by the President that the facility was no longer needed.

The facility being completed commenced operation on April 1, 1945, and in November the contract was amended to reflect this fact by providing the lease should be considered effective and that " * * * title to the facility should be considered as vesting in the Government * * *" as of April 1, 1945. The lease was formally amended to commence on that day, the provision requiring first offer of the product of the facility to the Government being deleted. Shortly after these amendments Land O'Lakes executed and delivered to the United States the warranty deed containing the provisions prescribed by the contract. Such deed obligated Land O'Lakes to pay taxes for 1945 and prior years and it gave its bond to secure such payment.

Effective as of May 1, 1945 (Ownership on that day being determinative of taxable status for the year of real property in the State of Minnesota) the State assessed the property at its full and true value and levied and extended a tax thereon for the year 1945 in the amount of $3,249.00. Such action was taken on the presumed authority conferred by M.S.A. cc. 273 and 275. Land O'Lakes paid the first one-half of this amount and then sought to challenge the imposition of the tax on the ground the property was on May 1, 1945 owned by the Government and accordingly enjoyed an immunity from state taxation. Its suit in that regard did not result in a decision on the merits because of its improper choice of remedy. Land O'Lakes Dairy Co. v. Village of Sebeka, 225 Minn. 540, 31 N.W.2d 660. Land O'Lakes then sought to pay the balance of 1945 tax as it was obligated to do by its deed and bond but its tender was refused because 1946 taxes had by then been assessed and recorded and under Minnesota law money so paid must first be applied to the last recorded tax. M.S.A. §§ 281.01 and 281.02.

While the last mentioned case was pending and under the tax procedures set out in M.S.A. cc. 279 and 280, a tax judgment was entered and on the sale the property was struck off to the State. Land O'Lakes then sought to set aside the sale and commenced an action seeking that relief and a judgment that the assessment, levy, judgment and sale were void. The trial court dismissed the case on its merits basing its judgment on facts found and stated in an accompanying memorandum to the effect that (1) the warranty deed was in reality a mortgage, (2) the tax proceedings were in rem and the rights acquired by the State in such proceedings were subordinate to the rights in the real estate held by the United States so that no question of Federal tax immunity was involved. This judgment was affirmed by the Minnesota Supreme Court, Land O'Lakes Dairy Company v.

County of Wadena, 229 Minn. 263, 39 N.W. 2d 164, and by the United States Supreme Court, 338 U.S. 897, 70 S.Ct. 251, 94 L.Ed. 552.

After 1945, taxes were assessed from year to year and such assessments now appear of record for the years 1946 to 1952 inclusive. The 1945 tax certificate is still held by the State. Land O'Lakes stands ready to pay the amount required to redeem the tax certificate and the Government as part of the relief requested in connection with its claim against the State seeks a declaration that redemption may be made by payment of that amount only and an order enjoining the State from requiring application of such payment to alleged tax claims for subsequent years.

Again referring to the transaction between the Government and Land O'Lakes, the Presidential declaration, referred to in the deed, having been made, Land O'Lakes terminated the lease, as renewed, by formal notice effective July 1, 1950. A quit-claim deed was then prepared but was not executed and delivered until after the commencement of the present proceedings.

The Government in May 1951 declared the property to be in excess of its needs at which time the Department of Agriculture was designated agent to effect a sale. Since the tax claims appearing of record constituted at least a cloud upon the title, the Government in advertising for bids stated that the sale would be with warranty against all tax claims and bids were requested on that basis in June 1952. A commitment was obtained from Land O'Lakes prior to opening the bids that should that company be high bidder the sale would have no effect on whatever liability it might have with reference to the tax claims. Land O'Lakes was in fact the high bidder and its bid has been accepted by the Government.

The pertinent history of the property located in Polk County which is involved in Civil Case No. 905 is essentially the same, the transaction being evidenced by a contract, lease and deed in the same form. The contract and lease were executed prior to May 1, 1944. The plant came into operation March 1, 1945, amendments to the contract and lease were made to conform

to that effective date, and the warranty deed was executed on May 26, 1945. As in the case of the Wadena property, Land O'Lakes terminated the lease by formal notice, in this case effective December 20, 1949.

The tax situation here is different by reason of the fact 1945 taxes were paid and no action was taken by the State with reference to taxes for the years 1946 to 1950 inclusive until December 1950 when assessment was made and the levy extended against the property (as omitted property under M.S.A. sec. 273.02) for those years. Taxes for 1951 and 1952 were levied in the customary way. No proceedings have been taken to enforce the alleged tax liens and no other litigation has taken place. This property has also been declared surplus and Land O'Lakes Creameries, Inc., not a party to these proceedings, is the high bidder and is entitled to a conveyance with warranty.

The Government does not here seek to question the validity of the tax assessments against the interest of Land O'Lakes in the properties but asserts the immunity of its own interest therein under the Federal Constitution, and claims that any purported liens or charges against the land resulting from the assessments have now terminated by reason of the termination of the interest of Land O'Lakes therein.

The State takes the position that the taxes were validly imposed against the land itself and created perpetual liens thereon under M.S.A. sec. 272.31 which remain in effect though unenforceable during the period of Government ownership by reason of the Government's immunity from suit. The State contends the contract, deed and lease constituted a security transaction and accordingly the Government acquired thereby only the interest of a mortgagee and that it did not acquire ownership of the property at least until the termination of the leases and the simultaneous failure of the conditions stated in the deeds, and that when so acquired the interest was taken subject to the tax liens or charges.

The State also claims it is a beneficiary of the tax agreements contained in the leases, has standing to sue thereon, and on that theory joins the Government in seeking

relief against Land O'Lakes. It also urges on general equitable grounds that the Government should be relegated to such relief.

Land O'Lakes asserts it had no taxable interest in the properties and the taxes are accordingly void, but that even if a taxable interest arose as the result of the contract, deed and lease, such interest is now terminated and the tax charges expired with it. This defendant also claims the State has no standing to assert any claim based upon the provisions of the leases.

■■ As a starting point here it must be recognized that both the property and the operations of the Federal Government enjoy an implied constitutional immunity from taxation by the State except as the Government has assented thereto. McColloch v. Maryland, 4 Wheat. 316, 4 L.Ed. 579; United States v. County of Allegheny, 322 U.S. 174, 64 S.Ct. 908, 88 L.Ed. 1209. We are not concerned here with Federal operation as such but with the property of the United States. No case of which I am aware permits the imposition of a tax upon the Government interest in property although the extent to which private interests in the same property may be subjected to tax has varied from time to time. As indicated by the decision in S. R. A. Inc., v. State of Minnesota, 327 U.S. 558, 66 S.Ct. 749, 90 L.Ed. 851, such interest will be held taxable if it may be segregated from the interest of the United States and the incidence of the tax is not borne by nor based upon the interest of the Government even though it may have an incidental and merely economic effect thereon, such as an effect upon its marketability. See State of Alabama v. King & Boozer, 314 U.S. 1, 62 S.Ct. 43, 86 L.Ed. 3. Accordingly it appears that the immunity in this case extends only to the limits of the Government's interest and no further.

In view of the above it becomes necessary to ascertain the nature of the Government's interests in the two tracts resulting from the transactions involved here.

■ Normally where the United States is a party to a contract or other instrument the same rules are to be applied to determine their validity and construction as would be applied in the case of private parties. Lynch v. United States, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434. In this case the situs of the properties being in Minnesota that law is applicable. United States v. Crosby, 7 Cranch 115, 3 L.Ed. 287. However, in the sense that settled governmental policies or operations will not be permitted to be defeated by state law, the construction of such instruments is finally a matter of Federal Law. United States v. County of Allegheny, supra.

■ Whether a transaction which is cast in the form of a conditional sale of realty is what it purports to be or is in substance and reality a mortgage is ultimately a matter of the intention of the parties. Horbach v. Hill, 112 U.S. 144, 5 S.Ct. 81, 28 L.Ed. 670; Citizens Bank of Morris v. Meyer, 149 Minn. 94, 182 N.W. 913. The existence or non-existence of such intention is a matter of fact to be determined by reference to the instruments employed by the parties, and all the facts and circumstances surrounding the transaction. Nitkey v. Ward, 199 Minn. 334, 271 N.W. 873, 155 A.L.R. 1111 note.

■ In the present case the instruments may be said to be ambiguous since they contain certain indicia of mortgage as well as of conditional sale. The deeds refer to the title of the United States as "defeasible" and contain defeasance clauses similar in many respects to those found in mortgages. Also the provisions in the leases relating to the obligation of the lessee to repair, to insure, and to pay taxes taken in connection with the defeasance clauses may be considered indicia of mortgage. See Land O'Lakes Dairy Company v. County of Wadena, supra. However, the evidence here as to the surrounding facts and circumstances effectively rebut any inference of intention to mortgage which might be drawn from the instruments and establishes that the transactions were in fact conditional sales.

The testimony demonstrates that the provision for reverter was the equivalent of an option to purchase. Land O'Lakes was then engaged in the creamery business and was understandably reluctant to build such facilities without reserving a measure of protection against the possibility of their

494

later being acquired by a competitor. The initiative for the inclusion of such protective right came from Land O'Lakes and discussions with reference thereto were in terms of an option to repurchase. The language used in the instruments was that of the Government and was necessitated by the fact that at the time in question Government property of this type could not be disposed of except on the basis of a request for bids and sale to the highest bidder. Accordingly it was necessary to cast what was in reality an option into the form of a possibility of reverter. In the light of these circumstances the language used in the instruments does not give rise to any inference of mortgage.

■ The lease provisions relating to the obligation of the lessee to repair and to insure, in view of the property involved and the nature of the operation, do not imply an intention to mortgage. The provisions with reference to the payment of taxes must be understood in the light of the understanding of the parties as to its purpose. The testimony demonstrates that it was inserted by the Government whose representatives drafted the instruments. It was inserted therein as in similar instruments relating to real property in other states in anticipation of the possibility that the Congress might consent to the taxation of such properties, bills for that purpose having in fact been drafted, or that in some states leasehold interests might in themselves be taxable. Land O'Lakes in the course of negotiation indicated its understanding the property was not then subject to tax and upon its insistence the words "legally imposed" were added to the original draft. While contracts are to be construed in the light of the law of the place of performance and in fact Minnesota does not tax leasehold interests as such, we are not here dealing with a matter of interpretation but are seeking the intention of the parties on the larger issue of intention to mortgage and therefore the above considerations are relevant to the issue.

■ Other indicia are present both in the instruments and the surrounding circumstances which appear to decisively rebut any contention that a mortgage was intended. The language of conveyance used in the deed and the use of a lease in form, themselves import a conditional sale. The instruments do not reveal any obligation on the part of Land O'Lakes to make the payment prescribed and effect a reversion, nor was there any pre-existing indebtedness to be secured. The price paid by the Government was equivalent to the then total value of the property. All of these considerations are strong evidence that the transaction was what it purported to be. Nitkey v. Ward, supra.

It appears unrealistic to assume that the Government would loan money to the full value of property and doubly unrealistic to assume it would do so without exacting some form of personal obligation or commitment in return. United States v. Shelby Iron Co., 273 U.S. 571, 47 S.Ct. 515, 71 L. Ed. 781, which involves a fact situation somewhat similar to that in the present case is not controlling here because there an antecedent debt existed and the consideration paid for the conveyance was considerably less than the value of the property.

■ The witnesses here who took part in the negotiations all testified there was no intention to mortgage and that no mention was made then of mortgage or loan or words of similar import. Such direct testimony as to intention is competent, Grout v. Stewart, 96 Minn. 230, 104 N.W. 966, and, while the witnesses had no adverse interest in the matter, it confirms the conclusion as to intention here derived from the instruments employed and the surrounding facts and circumstances.

■ Accordingly the effect of the transactions was to vest title in the Government subject to a leasehold interest and a possibility of reverter. It does not appear that the decision in Land O'Lakes Dairy Company v. County of Wadena, supra, in any way prevents this conclusion or is inconsistent therewith. It is elementary that the judgment in that case is not res judicata of the issue here because of the difference of parties. Nor since the particular issue here is between the United States and the State is it necessary to consider whether Land O'Lakes might be subject to an estoppel here by reason of that judgment. The State

claims, however, that case established a principle of local law binding on this court as to the interests created by the identical instruments whose effect is in issue here. I do not consider that case to have altered the well settled law of Minnesota as illustrated by Nitkey v. Ward, supra. The judgment of the trial court in the Wadena case was reached on a purely documentary record without the presence of, and without the aid of the evidence adduced by, the Government, one of the parties to the transaction. Its finding on the record before it was affirmed under the Minnesota rule that such finding is to be sustained unless "clearly and manifestly contrary to the evidence". Nitkey v. Ward, 199 Minn. 334, 345, 271 N. W. 873, 879.

A conveyance subject to a possibility of reverter immediately vests in the grantee an estate in fee. Little Falls Water Power Co. of Minnesota v. Mahan, 69 Minn. 253, 72 N.W. 69; Bybee v. Oregon & C. Railroad Company, 139 U.S. 663, 11 S.Ct. 641, 35 L.Ed. 305. Accordingly the interest of Land O'Lakes in the properties ended upon the termination of its leaseholds, in 1950 as to the Wadena County property and 1949 as to the Polk County property, because it thereby lost the opportunity to make the payments which constituted the conditions upon which the vesting under the possibilities of reverter was to occur. Consequently the Government at that time took nothing by the event. Its interest which constituted ownership related back to the delivery of the deeds. The quitclaim deeds from Land O'Lakes, subsequently delivered, had no effect other than to supply recordable evidence of the failure of the condition.

The tax assessments never attached to or became a charge on the interest of the Government for the reasons previously set out. If they became charges on any interest of Land O'Lakes they did not survive the termination of that interest. United States v. City of Philadelphia, 3 Cir., 140 F.2d 406. Since the Government took its interest prior to the dates the tax liens are alleged to have arisen, United States v. State of Alabama, 313 U.S. 274, 61 S.Ct. 1011, 85 L.Ed. 1327, is not here controlling.

It follows that the tax assessments made after such termination were void in their inception. Accordingly the tax assessments on both properties for the years 1946 to 1952 inclusive are now mere clouds on the title of the Government.

The United States is entitled to the relief prayed against the State unless it has also an enforceable right against Land O'Lakes to which it should be relegated at the instance of the State. The State contends the Government does have such a right even though the tax assessments as here determined are mere clouds upon the title, and asserts its own standing to join in the enforcement thereof as a donee or creditor beneficiary of the agreement.

Under the law of Minnesota a contract may be enforced by a donee or creditor beneficiary thereof but not by a mere incidental beneficiary. See LaMourea v. Rhude, 209 Minn. 53, 295 N.W. 304. A stranger to the contract, even though he will benefit from the performance of the parties, is merely an incidental beneficiary unless the parties thereto have expressed an intention to benefit him, or, in other words, have expressed an intention to create in the stranger a right to enforce the contract. Gjovik v. Bemidji Local Bus Line, 223 Minn. 522, 27 N.W.2d 273; LaMourea v. Rhude, supra. The present agreement on its face does not manifest any such intention to benefit and the State is a mere incidental beneficiary. See United States v. City of Philadelphia, supra.

The State urges that, regardless of its own standing to sue, general considerations of equity and fairness should lead the court to relegate the Government to its alleged right under the contract. This court, however, is in no position to speculate upon the existence of such right. The State having no standing to enforce the agreement has no standing to urge any construction of its language other than that adopted by the parties thereto. There is no compelling reason indicated that the Government and Land O'Lakes are wrong in contending the agreement gives rise only to rights which are truly alternative to that sought to be enforced against the State. Whatever the effect of the decision in the Wadena case

it did not involve any question of personal liability for the amounts assessed.

The United States being entitled in each case to the primary relief sought in its amended complaint, an appropriate judgment and decree, with findings of fact, conclusions of law, and order for judgment in accordance with this opinion, may be drawn and submitted.